985 So.2d 204 (2008)
Earnest W. LOFTICE
v.
Kathleen Creel LOFTICE.
No. 2007 CA 1741.
Court of Appeal of Louisiana, First Circuit.
March 26, 2008.
*205 M. Reggie Simmons, Franklinton, LA, for Plaintiff/Appellant, Earnest W. Loftice.
Peter Scott Michell, Hammond, LA, for Defendant/Appellee, Kathleen Creel Loftice.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
*206 GUIDRY, J.
In this divorce action, plaintiff, Earnest W. Loftice, appeals the trial court's judgment ordering him to pay defendant, Kathleen Creel Loftice, interim spousal support. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
Earnest Loftice and Kathleen Loftice were married on October 20, 1998; however, the two separated in September of 2001. Mr. Loftice thereafter filed a petition for divorce on April 5, 2002. Ms. Loftice answered the petition for divorce on April 22, 2002, and filed a reconventional demand, wherein she sought interim spousal support. The matters were set for hearing on July 23, 2002; however, the hearing was continued several times.[1] On October 10, 2003, Ms. Loftice filed a motion to fix interim spousal support and a motion to compel discovery. Following a hearing on October 20, 2003, the parties entered into a stipulation regarding medical insurance coverage and discovery deadlines, but the court ordered all other motions to be re-filed by the attorneys.
Thereafter, on July 7, 2004, Mr. Loftice, pro se, filed a motion for default judgment. The court granted Mr. Loftice's motion and signed a judgment of divorce on July 20, 2004. Ms. Loftice subsequently filed a motion to vacate the judgment of divorce, wherein she re-asserted her claim for interim spousal support, on May 18, 2005. Following a hearing on August 3, 2005, in a judgment signed October 5, 2005, the divorce judgment was nullified and all other outstanding matters were re-set for another hearing date.
Ms. Loftice filed a motion to set spousal support, motion for contempt and a motion to compel on November 21, 2005, pursuant to the court's October 5, 2005 judgment. These matters were set for hearing on January 10, 2006. Following the hearing, the trial court rendered judgment in favor of Ms. Loftice on March 2, 2006. Mr. Loftice was found in contempt of court and ordered to pay a fine, attorney fees, and court costs associated with bringing the contempt motion to hearing. Additionally, Mr. Loftice was ordered to pay $1,500.00 per month in interim spousal support from the date of judicial demand in the reconventional demand.[2]
Thereafter, Mr. Loftice filed a motion to set his petition for divorce for trial on April 13, 2006. A judgment of divorce was entered on May 9, 2006. On that same date, Mr. Loftice filed a motion to terminate interim spousal support as of the date of filing, but reserved his right to seek retroactive termination. The matter was set for hearing, but was continued due to Mr. Loftice's failure to timely serve Ms. Loftice. Additionally, on July 12, 2006, Mr. Loftice filed an action for nullity of the March 2, 2006 judgment or alternatively, a motion for new trial.[3] Following a hearing on September 7, 2006, the trial court signed a judgment ordering that the March 2, 2006 judgment be set aside in all respects and that Mr. Loftice be granted a *207 new trial of all issues on October 25, 2006; however, the action for nullity was dismissed.
Prior to the trial scheduled for October 25, 2006, Mr. Loftice filed peremptory exceptions raising the objections of no cause of action and no right of action in reference to Ms. Loftice's rule seeking spousal support. Following the October 25, 2006 trial, the trial court entered judgment in favor of Ms. Loftice, ordering Mr. Loftice to pay interim spousal support in the amount of $1,250.00 per month for each month from April 22, 2002, the date of judicial demand, through April 4, 2004, the date Ms. Loftice admitted to living with another man, for a total amount of $29,500.00. The trial court also denied Mr. Loftice's peremptory exceptions. Mr. Loftice now appeals from this judgment, asserting that the trial court:
1. Abused its discretion in finding Ms. Loftice in need of interim spousal support;
2. Abused its discretion in awarding Ms. Loftice interim spousal support retroactive to the date of judicial demand;
3. Erred in considering Mr. Loftice's exempt retirement savings when determining his ability to pay interim spousal support; and
4. Erred in ruling that Ms. Loftice was entitled to interim spousal support despite her execution of two prenuptial agreements.

DISCUSSION
In a proceeding for divorce, the court may award an interim periodic support allowance to a spouse based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living of the spouses during the marriage. La. C.C. arts. 111 and 113. Interim spousal support is designed to assist the claimant spouse in sustaining the same style or standard of living that he or she enjoyed while residing with the other spouse, pending the litigation of the divorce. Lambert v. Lambert, 06-2399, p. 10 (La.App. 1st Cir.3/23/07), 960 So.2d 921, 928. A spouse's right to claim interim periodic support is grounded in the statutorily imposed duty on spouses to support each other during marriage and thus provides for the spouse who does not have sufficient income for his or her maintenance during the period of separation. Lambert, 06-2399 at p. 10, 960 So.2d at 928. Interim support preserves parity in the levels of maintenance and support and avoids unnecessary financial dislocation until a final determination of support can be made. Lambert, 06-2399 at p. 10, 960 So.2d at 928.
The spouse seeking interim spousal support bears the burden of proving his or her entitlement to such support. Romanowski v. Romanowski, 03-0124, p. 11 (La.App. 1st Cir.2/23/04), 873 So.2d 656, 663-664, To determine whether a claimant spouse is entitled to receive interim support, the trial court must assess the needs of that spouse, the ability of the non-claimant spouse to pay, and their standard of living during the marriage. Lambert, 06-2399 at p. 11, 960 So.2d at 928.
A claimant demonstrates the need for interim spousal support if she establishes that she lacks sufficient income or the ability to earn a sufficient income to sustain the style or standard of living that she employed while she resided with the other spouse. Lambert, 06-2399 at p. 11, 960 So.2d at 928. The needs of the claimant spouse have been defined as the total amount sufficient to maintain that spouse in a standard of living comparable to that enjoyed prior to the separation, limited only by the other spouse's ability to pay. *208 Lambert, 06-2399 at p. 11, 960 So.2d at 929.
Once the claimant spouse has established need, the court must examine the ability of the payor spouse to provide support. Lambert, 06-2399 at p. 11, 960 So.2d at 929. If the needs of the claimant spouse surpass the ability of the other spouse to pay, interim spousal support should be fixed at a sum that will as nearly as possible be just and fair to all parties involved. Lambert, 06-2399 at p. 11, 960 So.2d at 929.
In assessing a spouse's ability to pay, the court must consider his or her means. "Means" includes any resource from which the wants of life may be supplied, requiring an assessment of the entire financial condition of the payor spouse. Lambert, 06-2399 at p. 11, 960 So.2d at 929. "Entire financial condition" is not limited to income, but also includes any resource from which his or her needs can be supplied, including income from labor or services performed, physical property, income from such property, and a spouse's earning capacity. See Lambert, 06-2399 at pp. 11-12, 960 So.2d at 929; see also Vassallo v. Vassallo, 540 So.2d 1300, 1303 (La.App. 5th Cir.1989).
The trial court is vested with much discretion in determining an award of interim spousal support. Such a determination will not be disturbed absent a clear abuse of discretion. Lambert, 06-2399 at p. 10, 960 So.2d at 928. An abuse of discretion will not be found if the record supports the trial court's conclusions about the needs of the claimant spouse or the means of the payor spouse and his or her ability to pay. See Lambert, 06-2399 at pp. 10-11, 960 So.2d at 928.
From our review of the record, we do not find that the trial court abused its discretion in determining that Ms. Loftice established her need for interim spousal support. According to the record, prior to her separation from Mr. Loftice, Ms. Loftice held several positions in the legal field, mostly as a legal secretary, and otherwise enjoyed a comfortable standard of living with Mr. Loftice, which involved traveling. During their marriage, Mr. Loftice and Ms. Loftice shared a mobile home and some property in Mount Herman, Louisiana, and for a period of time also rented and furnished an apartment in Baton Rouge, Louisiana. Further, according to Ms. Loftice's testimony, the parties had selected a piece of land and had planned to build a new home. After their separation, Ms. Loftice continued to work as a legal secretary, and then from approximately September of 2002 to August of 2003, Ms. Loftice attended college full-time in Long Beach, Mississippi and worked part-time, sporadically, with Kelly Services. In addition, after her separation from Mr. Loftice, Ms. Loftice was diagnosed with colon cancer in 2002 and underwent substantial medical treatment. In her affidavit of income submitted to the trial court, Ms. Loftice indicated that her monthly bills, excluding costs for treatment of cancer, almost equaled her income after deductions. Further, her remaining medical bills were substantial.[4]
*209 With regard to Mr. Loftice's ability to pay, the record establishes that Mr. Loftice received approximately $1,800.00 to $2,000.00 per month in retirement from ExxonMobil, $140,000.00 in settlement proceeds from ExxonMobil, and varying amounts from cutting and selling timber from his land holdings. On appeal, Mr. Loftice asserts only that the trial court erred in considering his retirement income in determining his ability to pay interim spousal support. However, as stated above, in assessing a spouse's ability to pay, the court must consider his or her means, which includes any resource from which the wants of life may be supplied, and requires an assessment of the entire financial condition of the payor spouse. Lambert, 06-2399 at p. 11, 960 So.2d at 929. Several courts of this state have determined that income from social security, veteran's benefits, and retirement plans can be considered in determining a spouse's ability to pay spousal support. See Walker v. Walker, 41,573, p. 5 (La. App. 2nd Cir.11/1/06), 942 So.2d 605, 609; Jenkins v. Jenkins, 616 So.2d 786, 788 (La.App. 2nd Cir.1993); Vassallo v. Vassallo, 540 So.2d 1300, 1302 (La.App. 5th Cir.1989); and Collins v. Collins, 458 So.2d 1008, 1010 (La.App. 3rd Cir.1984).
Mr. Loftice, however, asserts that La. R.S. 13:3881(D) exempts his retirement income from consideration for purposes of spousal support. Louisiana Revised Statute 13:3881(D) provides, in part, that "the following shall be exempt from all liability for any debt except alimony and child support: all pensions, all tax-deferred arrangements, annuity contracts, and all proceeds of and payments under all tax-deferred arrangements and annuity contracts." (Emphasis added.) Mr. Loftice asserts that because Ms. Loftice is seeking "spousal support" and not "alimony" that the exception to this exemption does not apply, and accordingly, the trial court erred in considering his tax-exempt retirement income in determining his ability to pay spousal support. However, we find this argument to be without merit.
Louisiana Revised Statute 13:3881 was enacted in 1960. At that time, the Louisiana Civil Code articles relating to spousal support used the terms "alimony pendente lite" and "permanent periodic alimony." In 1997, the Louisiana Civil Code's spousal support articles were amended by La. Acts No. 1078, Regular Session. Pursuant to these amendments, the terms "alimony pendente lite" and "permanent periodic alimony" were eliminated and the terms "interim spousal support" and "final periodic spousal support" were substituted. Jones v. Jones, 34, 822, pp. 2-3 (La.App. 2nd Cir.6/20/01), 793 So.2d 243, 245. However, the purpose of interim spousal support is equivalent to that of former La. C.C. art. 111 referring to alimony pendente lite, and the factors required to assess such an award were not changed. See La. C.C. art. 113, 1997 Revision comment (a); see also Derouen v. Derouen, 04-1137, p. 3 (La.App. 3rd Cir.2/2/05), 893 So.2d 981, 984.
Further, a similar exemption provision found in the Social Security Act regarding social security benefits has an exception *210 for the payment of child support and alimony. See 42 U.S.C.A. §§ 407 and 659. Courts have recognized "alimony" as referred to in that statute as alimony between spouses by applying this exception to claims for alimony pendente lite and permanent alimony. Further, these same courts, in light of this exception, have considered a spouse's social security income in determining that spouse's ability to pay alimony, either permanent or pendente lite, to another spouse. See Walker, 41,573 at p. 5, 942 So.2d at 609; Jenkins, 616 So.2d at 788; Vassallo, 540 So.2d at 1302; and Collins, 458 So.2d at 1010.
Accordingly, we find that contrary to Mr. Loftice's assertion, the reference to "alimony" in La. R.S. 13:3881(D) refers to what is now recognized as "spousal support." See Dillon v. Dillon, 03-35, p. 5 (La.App. 5th Cir.4/29/03), 846 So.2d 153, 155 (finding the trial court did not err under La. R.S. 13:3881(D)(1) in ordering an income assignment of appellant's retirement benefits for the current spousal support obligation.) Therefore, we find the trial court properly considered Mr. Loftice's retirement income in determining his ability to pay interim spousal support. Further, we find no abuse of discretion in the trial court's determination that Ms. Loftice is entitled to $1,250.00 per month for interim spousal support.
In awarding Ms. Loftice interim spousal support, the trial court determined that Mr. Loftice owed Ms. Loftice support from the date of judicial demand, April 22, 2002, through April 4, 2004, the date upon which Ms. Loftice admitted to living with another man. See La. C.C. art. 115.[5] An order for interim spousal support is retroactive to the filing date of the petition for spousal support. La. R.S. 9:310(A). However, if the court "finds good cause for not making the award retroactive, the court may fix the date such award shall become due." La. R.S. 9:310(C). Absent a showing of good cause, it is mandatory that an award for spousal support be made retroactive to the filing date. Broussard v. Broussard, 532 So.2d 281, 282 (La.App. 3rd Cir.1988). The burden is on the defendant in rule to show good cause for not making the award retroactive. Broussard, 532 So.2d at 283.
In the instant case, Mr. Loftice asserts the trial court abused its discretion in awarding Ms. Loftice interim spousal support retroactive to the date of judicial demand. At trial, Mr. Loftice argued that good cause existed for not making the award retroactive to the date of judicial demand because of Ms. Loftice's failure to reset her rule for interim spousal support after the granting of several continuances. However, our review of the record indicates that this has been a procedurally complicated proceeding. As outlined above, Ms. Loftice filed her initial request for interim spousal support in her reconventional demand on April 22, 2002. The matter was continued several times, at the request of or for the consideration of Mr. Loftice, and by the court on its own motion.[6] Thereafter, Ms. Loftice filed several motions regarding her request for interim spousal support. Mr. Loftice sought and was awarded a default judgment of divorce, which was later nullified, and again *211 Ms. Loftice filed a motion requesting interim spousal support. The motion was finally heard on January 10, 2006, wherein a judgment was rendered in favor of Ms. Loftice. However, this judgment was subsequently set aside pursuant to the trial court's granting of Mr. Loftice's request for a new trial. The matter was finally before the court at the trial on October 25, 2006, wherein the trial court awarded Ms. Loftice interim spousal support from the date of judicial demand. Clearly, the trial court was familiar with the procedural quagmires of this case, the parties' inability to conduct and exchange discovery as evidenced by the numerous motions to compel and orders regarding discovery matters, and Mr. Loftice's repeated changes in counsel, and at times, his pro se representation. Accordingly, from our review of the record, we cannot find that the trial court abused its discretion in awarding Ms. Loftice interim spousal support retroactive to the date of judicial demand. Further, because the trial court specifically acknowledged that Ms. Loftice was not entitled to spousal support after April 4, 2004, when she admitted to living with another man, we find Mr. Loftice's arguments regarding this issue to be without merit.
Finally, Mr. Loftice asserts that the trial court erred in failing to recognize two prenuptial agreements that he and Ms. Loftice executed. In these agreements, the parties stated that they would be separate in property and that: "they and each of them do hereby expressly reserve to the themselves individually the entire administration of their respective particular property, . . . and the respective free enjoyment of each of their revenues."
The Louisiana Civil Code gives spouses, before or during marriage, the right to enter into a matrimonial agreement as to all matters that are not prohibited by public policy. La. C.C. art. 2329. However, the Louisiana Supreme Court in Holliday v. Holliday, 358 So.2d 618, 620 (La.1978), held that prenuptial agreements in which a spouse waives his or her right to alimony pendente lite in the event of separation are null and void as against public policy. The public policy the court referred to, as expressed in former Civil Code articles 119, 120, and 148, was that a husband should support and assist his wife during the existence of the marriage. The court determined that this legal obligation of support, as well as the fact that the conditions affecting entitlement to alimony pendente lite could not be foreseen at the time prenuptial agreements are entered into, overrides the premarital anticipatory waiver of alimony. Holliday, 358 So.2d at 620.
Thus, alimony pendente lite, or what is now known as interim spousal support, is based on the statutorily imposed duty of the spouses to support each other during marriage. La. C.C. art. 98[7]; see also Lambert, 06-2399 at p. 10, 960 So.2d at 928. Comment (e) to La. C.C. art. 98 states that "[t]he spouses' duties under this Article, as a general rule, are matters of public order from which they may not derogate by contract." McAlpine v. McAlpine, 94-1594, p. 9 (La.9/5/96), 679 So.2d 85, 90.
Therefore, though we do not find that the prenuptial agreements entered into between the parties specifically waive any right to interim spousal support, even if they could be so construed, we find based on the law as outlined above that such *212 waiver would be void as against public policy. See La. C.C. art. 7; Holliday, 358 So.2d at 620. Accordingly, we find Mr. Loftice's assignment of error to be without merit.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are to be assessed against the appellant, Earnest Loftice.
AFFIRMED.
HUGHES J., concurs.
NOTES
[1] The hearing was originally continued by motion of Mr. Loftice in July of 2002. The matter was re-set for August 29, 2002, but was continued to September 23, 2002, when Mr. Loftice's counsel withdrew as his attorney of record.
[2] A motion to appeal from this judgment was filed on March 29, 2006; however, Mr. Loftice, pro se, requested that the order for appeal not be signed on April 3, 2006.
[3] Mr. Loftice sought to have the judgment annulled because neither he nor his counsel were properly notified of the January 10, 2006 trial, and consequently, were not present to defend against Ms. Loftice's rule or motions.
[4] Mr. Loftice asserts in brief that Ms. Loftice received $10,000.00 from the sale of her grandmother's home, in addition to enjoying an improved standard of living post separation. Mr. Loftice contends that Ms. Loftice lived in an "upscale, gated condominium" and purchased a "new Monte Carlo" after their separation. However, Ms. Loftice testified that she sold her grandmother's home prior to her separation from Mr. Loftice, and that she used the proceeds from the sale to pay off several credit cards in Mr. Loftice's name. Mr. Loftice did not dispute that Ms. Loftice paid sums on these credit card balances. Further, there is no evidence that Ms. Loftice's residences post separation were "upscale." Rather, the testimony merely establishes that she lived in several apartments in Mississippi, one of which was damaged by Hurricane Katrina. Further, Ms. Loftice testified with reference to the car that she purchased a Monte Carlo from her daughter's ex-fiance for approximately $5,000.00, which agreement had been reached only five months prior to her deposition in August of 2006. Accordingly, we find Mr. Loftice's reliance on these facts in support of his assertion that Ms. Loftice enjoyed an improved standard of living post-separation to be misplaced.
[5] Louisiana Civil Code article 115 provides:

The obligation of spousal support is extinguished upon the remarriage of the obligee, the death of either party, or a judicial determination that the obligee has cohabited with another person of either sex in the manner of married persons.
[6] Apparently, Mr. Loftice was represented by at least five different attorneys during the course of these proceedings, and at times, appeared before the court pro se.
[7] Louisiana Civil Code article 98, which provides that "[m]arried persons owe each other fidelity, support, and assistance," was enacted by La. Acts 1987, No. 886, § 1 and reproduces the source provision of La. C.C. art. 119 (1870) almost verbatim and does not change the law. See La. C.C. art. 98, 1987 Revision comment (a).