McClendon, j.
 

 12This is an appeal of a trial court judgment granting a former spouse the right to seek permanent spousal support and reimbursement based on a matrimonial agreement signed by the parties prior to their marriage. For the following reasons, we amend in part, reverse in part, and render.
 

 FACTS AND PROCEDURAL HISTORY
 

 Harold J. Barber and Deborah Carpenter Barber were married on November 14,
 
 *1048
 
 1999, and established their matrimonial domicile in Washington Parish. No children were born of the marriage. The parties separated on November 4, 2006, and on November 14, 2006, Mr. Barber filed a petition for divorce. Mr. Barber alleged that the parties entered into a separate property agreement on November 12,1999. He further desired exclusive use of the family home in Franklinton, asserting that it was his separate property. An amending and supplemental petition was filed on May 15, 2007, in which Mr. Barber sought a divorce based on the parties living separate and apart for more than six months.
 

 On June 11, 2007, Mrs. Barber filed a rule for interim periodic spousal support and rental assessment, in which she asserted she was in necessitous circumstances and suffering from multiple sclerosis.
 
 [1]
 
 She also asserted that although she had no objection to Mr. Barber’s exclusive use and occupancy of the family home, she requested that Mr. Barber be assessed a rental value for his use of the former matrimonial domicile.
 

 Also, on June 11, 2007, Mrs. Barber filed an answer and reconventional demand. In her reconventional demand, Mrs. Barber asserted that the matrimonial agreement signed on November 12, 1999 was invalid and unenforceable as it was improperly perfected, signed under duress, and signed through misrepresentation and fraud. She further contended that she was not | sallowed legal representation nor given the opportunity to have the agreement reviewed by anyone. As such, Mrs. Barber requested a declaration that all property acquired during the marriage be deemed community property, entitling her to interim spousal support, permanent and final support, medical insurance coverage, reimbursement and credit of funds paid for obligations and debts during the marriage, and all fruits, revenues and increases of property belonging to the community.
 

 Mr. Barber was granted a judgment of divorce on June 14, 2007.
 

 On August 5, 2008, Mr. Barber filed a motion for declaratory judgment seeking a judgment declaring the prenuptial agreement valid. A trial on the motion was held on August 20, 2008. The trial court determined that the stresses and time limitations that Mrs. Barber underwent did not amount to vices of duress or error. The trial court also determined that the contract was an authentic act. The trial court then stated:
 

 An examination of the contract reveals that the references to spousal support are contained in paragraph six of the otherwise lawful agreement. In the same sentence of that paragraph, the parties agree to waive interim and final spousal support. As was previously noted, the waiver of interim spousal support has been unlawful for thirty years, and was unlawful at the time this agreement was written. The court finds the provisions of paragraph six of the agreement to be inextricably bound, and strikes the entire paragraph. In all other regards, the contract is found to be lawful.
 

 Judgment was signed on December 10, 2008, allowing Mrs. Barber the right to seek interim and permanent spousal support from Mr. Barber. The judgment also added the following: “That Deborah Barber is reserved the right to seek reimbursement of contribution to the estate of Harold Barber, as per law.”
 

 Mr. Barber appealed, alleging that the trial court erred in ruling that the waiver
 
 *1049
 
 of temporary and permanent support were so “inextricably bound” so as to render the waiver of permanent support unenforceable. He also asserts that 14the trial court erred in ruling that Mrs. Barber had not waived her right to seek reimbursement.
 
 [2]
 

 DISCUSSION
 

 When parties are bound by a valid contract and material facts are not in conflict, the contract’s application to the case is a matter of law. Am appellate review that is not founded upon any factual findings made at the trial court level, but is based upon an independent review and analysis of the contract within the four corners of the document, is not subject to the manifest error rule of law. In such cases, appellate review is simply whether the trial court was legally correct.
 
 Boh Bros. Const. Co., L.L.C. v. State ex rel. Dept. of Transp. and Development,
 
 08-1793, p. 8 (La.App. 1 Cir. 3/27/09), 9 So.3d 982, 984,
 
 writ denied,
 
 09-0856 (La.6/5/09), 9 So.3d 870;
 
 Claitor v. Delahoussaye,
 
 02-1632, p. 11 (La.App. 1 Cir. 5/28/03), 858 So.2d 469, 478,
 
 writ denied,
 
 03-1820 (La.10/17/03), 855 So.2d 764.
 

 Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. In other words, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. LSA-C.C. 2045;
 
 Boh Bros. Const. Co., L.L.C,
 
 08-1793 at p. 4, 9 So.3d at 984.
 

 The Louisiana Civil Code gives spouses, before or during marriage, the right to enter into a matrimonial agreement as to all matters that are not prohibited by public policy. LSA-C.C. art. 2329;
 
 Loftice v. Loftice,
 
 07-1741, p. 11 (La.App. 1 Cir. 3/26/08), 985 So.2d 204, 211. However, the supreme court in
 
 Holliday v. Holliday,
 
 358 So.2d 618, 620 (La.1978), held that prenuptial agreements in which a spouse waives his or her right to alimony pendente lite in the event of separation are null and void as against public policy. The public policy the court referred to was that a husband should support and assist his | swife during the existence of the marriage. The court determined that this legal obligation of support, as well as the fact that the conditions affecting entitlement to alimony pen-dente lite could not be foreseen at the time prenuptial agreements are entered into, overrides the premarital anticipatory waiver of alimony.
 
 [3]
 

 Holliday,
 
 358 So.2d at 620;
 
 Loftice,
 
 07-1741 at p. 11, 985 So.2d at 211.
 

 Thus, alimony pendente lite, or what is now known as interim spousal support, is based on the statutorily imposed duty of the spouses to support each other during marriage. LSA-C.C. art. 98
 
 [4]
 
 ;
 
 Loftice,
 
 07-1741 at p. 11, 985 So.2d at
 
 *1050
 
 211.
 
 See also McAlpine v. McAlpine,
 
 94-1594, p. 9 (La.9/5/96), 679 So.2d 85, 90. However, there is no corresponding statutory duty of support mandating permanent spousal support between former spouses.
 
 See McAlpine,
 
 94-1594 at p. 9, 679 So.2d at 90. The court in
 
 McAlpine
 
 determined that permanent spousal support, unlike interim support, is not a law enacted for the public interest, but rather was enacted to protect individuals. Therefore, there is no prohibition against the waiver of post-divorce permanent spousal support.
 
 McAlpine,
 
 94-1594 at p. 16, 679 So.2d at 93.
 

 Relative to the nullity of a provision of an agreement, LSA-C.C. art. 2034 provides:
 

 Nullity of a provision does not render the whole contract null unless, from the nature of the provision or the intention of the parties, it can be presumed that the contract would not have been made without the null provision.
 

 According to the 1984 Revision Comments, the above article “directs the court to consider the totality of the parties’ intentions before annulling the agreement when only a portion of it is null.” LSA-C.C. art. 2034,1984 Revision Comment. Accordingly, like other questions of contract interpretation, whether an | ^agreement is sev-erable is controlled generally by the intent of the parties as expressed by the contract terms and/or language.
 
 Hudson v. City of Bossier City,
 
 05-0351, p. 20 (La.4/17/06), 930 So.2d 881, 894.
 
 See also Lebouef v. Liner,
 
 396 So.2d 376, 378 (La.App. 1 Cir. 1981).
 

 In its judgment, the trial court found the provisions of Paragraph 6 concerning interim and permanent spousal support “inextricably bound” and struck the entire paragraph. The judgment also included the reservation of Mrs. Barber’s right to seek reimbursement. Except for these exclusions, the matrimonial agreement was held to be valid and enforceable as an authentic act.
 

 While we agree with the trial court that the waiver of interim spousal support is against public policy and must be stricken from the agreement, we cannot say that the entire paragraph must be stricken. Paragraph 6 of the matrimonial agreement specifically provides:
 

 The appearers do further hereby expressly waive one from the other any and all entitlement to interim spousal support, final spousal support, or any support payments of whatsoever kind, character or nature, each of said appear-ers declaring that they are not and would not be entitled to any such alimony or support in the event of a dissolution of the marriage.
 

 Although the agreement regarding interim spousal support and final spousal support are in the same sentence, they are two distinct provisions with different interests and different requirements. It does not appear that the portion of the sentence regarding interim support is so entangled or tied up with the rest of the sentence that it cannot be deleted without striking the entire paragraph.
 
 [5]
 
 Accordingly, despite the difficult circumstances presented, we must reverse in part the judgment of the trial court insofar as it struck the entire paragraph regarding spousal support, and we amend the judgment to strike only that portion of Paragraph 6 as it concerns interim spousal support.
 

 Mr. Barber also argues that the trial court erred in ruling that Ms. Barber had not waived her right to seek reimbursement. He asserts that Paragraph 4 of |7the matrimonial agreement contains a
 
 *1051
 
 mutual waiver of the parties’ respective rights of reimbursement. Thus, according to Mr. Barber, the inclusion of the reservation in the judgment that contradicted the trial court’s written reasons, finding all provisions of the agreement valid except the waiver of support, was error.
 

 Paragraph 4 of the matrimonial agreement provides:
 

 Any increase or improvement of separate property of either appearer, as separate property as set forth in this agreement, arising or made during the marriage, as the result of common labor, expense or industry of the appear-ers, shall not create any right to a reward in favor of that appearer or the legal representative of that appearer to whom the property, which has been increased or improved, does not belong.
 

 As previously stated, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. LSA-C.C. art. 2045;
 
 Boh Bros. Const. Co., L.L.C.,
 
 08-1793 at p. 4, 9 So.3d at 984. Thus, when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. LSA-C.C. art. 2046. Also, to determine the meaning of words used in a contract, a court should give them their “generally prevailing meaning.” LSA-C.C. art. 2047.
 

 By the plain and clear words of Paragraph 4 of the matrimonial agreement, Mrs. Barber waived her right to reimbursement. Thus, it was error for the trial court to reserve to her those rights.
 
 [6]
 

 CONCLUSION
 

 For the above reasons, we reverse in part the December 10, 2008 judgment of the trial court, insofar as it strikes the entire Paragraph 6 of the matrimonial agreement, and amend the judgment to only strike that portion regarding the waiver of any interim spousal support. Further, we reverse that portion of the judgment reserving to Ms. Barber the right to seek reimbursement |sof contribution to the estate of Mr. Barber, as per law. All costs of this appeal are assessed to Deborah Barber.
 

 REVERSED IN PART, AMENDED IN PART, AND RENDERED.
 

 [1]
 

 . In the rule, it was alleged that Mrs. Barber was suffering from Lou Gerhrig’s disease, but it is undisputed that she has multiple sclerosis.
 

 [2]
 

 . We note that these are the only two assignments of error alleged in this matter. Although Mrs. Barber questions the validity of the matrimonial agreement, she did not appeal nor answer Mr. Barber's appeal. Thus, this issue is not before us, and we are unable to consider same.
 

 [3]
 

 .
 
 See
 
 LSA-C.C. art. 7, which provides that ‘‘[pjersons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity.”
 

 [4]
 

 .Louisiana Civil Code article 98, which provides that "[mjarried persons owe each other fidelity, support, and assistance,” was enacted by La. Acts 1987, No. 886, § 1 and reproduces the source provision of LSA-C.C. art. 119 (1870) almost verbatim and does not change the law.
 
 See
 
 LSAC.C. art. 98, 1987 Revision Comment (a). Comment (e) also states that "[t]he spouses' duties under this Article, as a general rule are matters of public order from which they may not derogate by contract.”
 

 [5]
 

 . The term "inextricable” has been is defined as forming a maze or tangle from which it is impossible to get free, and incapable of being disentangled or untied.
 
 Webster's New Collegiate Dictionary
 
 590 (1974).
 

 [6]
 

 . We further note that in its written reasons, the trial court stated that, with the exception of Paragraph 6 regarding spousal support, the prenuptial agreement was an "otherwise lawful agreement” and that “[i]n all other regards, the contract is found to be lawful.” Thus, the court clearly found Paragraph 4 to be a lawful provision.